NOT FOR PUBLICATION                                   (Doc. Nos. 13, 14)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                          :
TBI UNLIMITED, LLC,                       :
                                          :
                                          :     Civil No. 12-3355 (RBK/JS)
               Plaintiff,                 :
                                          :
        v.                                :     **OPINION**
                                          :
                                          :
CLEARCUT LAWN DECISIONS,                  :
LLC, et al.,                              :
                                          :
               Defendants.                :
_____ :

**KUGLER**, United States District Judge:

This matter arises out of Plaintiff TBI Unlimited, LLC's ("Plaintiff") claims against

Defendants Clear Cut Lawn Decisions, LLC, Clearcut, Inc., Michael Kaizar, Patrice Kaizar,

("Clear Cut") Safeguard Properties, Inc., and Safeguard Properties, LLC ("Safeguard")

(collectively, "Defendants") for breach of contract, quantum meruit, unjust enrichment, and

violation of the New Jersey Prompt Payment Act ("NJPPA").  Currently before the Court is

Defendants' motion to dismiss all claims against the Safeguard Defendants and to dismiss the

NJPPA claim against the Clearcut Defendants.[1]  For the reasons expressed herein, the Court will

grant Defendants' motions.

---

[1] The Clear Cut Defendants' motion on its face appears to seek dismissal of all counts.  However, they only offer argument in support of dismissing the NJPPA claim.  To the extent they rely on the Safeguard Defendants' brief in support of dismissing the rest of Plaintiffs' claims against them, those arguments, for the reasons expressed in this Opinion, are unavailing as to Clear Cut.  Thus, while the Court will grant the Clear Cut Defendants' motion to dismiss Plaintiff's NJPPA claim against them, it will deny the motion with respect to Plaintiff's remaining claims.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

In 2010 the Clear Cut Defendants contracted with the Safeguard Defendants to provide

lawn maintenance services to some of Safeguard's clients[2] in several East Coast states, including

New Jersey. Sec. Am. Compl. ¶ 17.  In February of 2010 Clear Cut entered into a subcontract

with Plaintiff to perform lawn maintenance for Safeguard's clients in New Jersey. *Id.* ¶ 19.

Throughout 2010, Plaintiff provided lawn maintenance services and Clear Cut made payment in

conformity with the parties' subcontract. *Id.* ¶ 25-27.  However, their relationship deteriorated in

May of 2011 when Clear Cut stopped paying Plaintiff for completed lawn maintenance. *Id.* ¶ 30-

32.

Plaintiff first filed its suit in this Court on June 4, 2012.  After the Court dismissed the

action for failing to properly allege subject matter jurisdiction, Plaintiff filed its Second

Amended Complaint on July, 11 2002 (Doc. No. 12).  Defendant filed the instant Motion to

Dismiss shortly thereafter (Doc. No. 13).

## II.     DISCUSSION & ANALYSIS

Defendants' motion to dismiss presents two issues.  First, Defendants ask the Court to

dismiss the NJPPA claim against them because they assert that the Act does not apply to a

contract for lawn mowing services.  Second, the Safeguard Defendants seek dismissal of the

remaining contract and quasi-contract claims directed against them for failure to state a plausible

claim for relief.  Following a brief recitation of the legal standard governing a motion to dismiss

under Federal Rule of Civil Procedure 12(b)(6), the Court will address each of these issues in

turn.

---

[2] Safeguard's clients are mortgage servicing companies who own foreclosed residential properties and who contract with Safeguard for property preservation services, including but not limited to lawn maintenance. Sec. Amend. Compl. ¶ 13-14.

2

A.      **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675).  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680).  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

**B.      New Jersey Prompt Payment Act Claim**

Count II of Plaintiff's Second Amended Complaint asserts a claim against Defendants under the New Jersey Prompt Payment Act ("NJPPA").  Defendants argue that the NJPPA does not apply to the contract in question because a contract to provide lawn mowing services is not a contract to "improve real property," as that term is defined under the statute.

Under the NJPPA, a party may bring suit to recover payments owing on a contract when they are more than thirty days overdue.  The Act does not apply to all service contracts, however. Instead, it applies only to agreements and contracts to improve to real property.  N.J.S.A. 2A:30A-1.  "To improve" land means, among other things, "to excavate, clear, grade, fill or landscape any real property." *Id.*  At issue in the instant case is whether the act of "landscap[ing]" includes lawn mowing.  As the Court's research did not reveal any case law addressing this matter, the Court will conduct its analysis according to traditional methods of statutory interpretation.

The Court begins with the plain meaning of the word "landscaping."  Landscaping is defined as "improve[ing] by landscape architecture or gardening." WEBSTERS THIRD NEW INTERNATIONAL DICTIONARY 1269 (1993).  Another volume defines landscaping to mean "[t]o adorn or improve (a section of ground) by contouring the land and planting flowers, shrubs, or trees." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 675 (1988).  These definitions suggest that the term involves enduring transformative acts to improve property, rather than those that involve simply routine maintenance.  Further, the Court relies on the familiar canon *noscitur a sociis* (a word is known by the company it keeps) in order to avoid giving unintended breadth to statutory terms.  *See Jarecki v. G.D. Searle*, 367 U.S. 303, 307 (1961).  Here the term "landscape" is preceded in a list by "excavate, clear, grade, [and] fill." N.J.S.A. 2A:30A-1.

These preceding terms all describe enduring changes to land.  Taken together, the Court finds

that the statutory definition of "landscape" under the NJPPA is limited to those activities which

serve to permanently alter the character of real property, rather than simply those activities

targeted at the maintenance or upkeep of such property.  *See generally* New Jersey Governor's

Message, 2006 S.B. 1726/A.B. 3174 (emphasizing that NJPPA would specifically impact

contracts for "construction projects" and making no mention of general maintenance).

Accordingly, the Court finds that the contract at issue, which was an agreement to

perform lawn mowing services, concerns the mere maintenance and upkeep of land, and is

therefore not a contract to "improve real property," as that term is defined under the NJPPA.

Accordingly, it will grant Defendants' motion to dismiss Count II of Plaintiff's Second Amended

Complaint.

**C.      Contract and Quasi-Contract Claims**

*i. Breach of contract and breach of oral contract.*

Counts I and III of Plaintiff's Second Amended Complaint assert breach of contract

claims against Safeguard.  The Safeguard Defendants argue that these claims should be

dismissed because Safeguard never entered into any contractual relationship with Plaintiff.

Rather, if any agreement exists, the only parties to it are Plaintiff and Clear Cut.

In order to state a claim for breach of contract, a plaintiff must establish that it entered

into a valid contract with the party against whom it seeks relief.  *See AT&T Credit Corp. v.*

*Zurich Data Corp.*, 37 F.Supp.2d 367, 370 (D.N.J. 1999).  No valid contract exists unless a party

alleges four elements: 1) a meeting of the minds; 2) an offer and acceptance; 3) consideration; 4)

reasonably certain contract terms.  *Big M, Inc. v. Dryden Advisory Group*, No. 08-3567, 2009

WL 1905106, at 18 (D.N.J. June 30, 2009).

In this case, Plaintiff's Second Amended Complaint does not allege any facts from which the Court can infer a contractual relationship between Plaintiff and Safeguard.  In fact there is nothing to indicate that Safeguard had any contact whatsoever with Plaintiff prior to the formation of the lawn services contract at issue.  In the absence of such communication, it is impossible for the Court to find that the parties ever reached a meeting of the minds, or exchanged a valid offer and acceptance.  *See generally MK Strategies, LLC v. Ann Taylor Stores Corp.*, No. 07-2519, 2007 WL 4322796 at *3 (D.N.J. Dec. 6, 2007) (finding that a breach of contract claim cannot be brought where a plaintiff fails to first establish any contact between the parties to suggest the existence of a contract).  Thus, the Court finds that the Safeguard Defendants did not enter into a contract with Plaintiff and thus cannot be liable for breaching that contract.  *See National Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 222 (D.N.J. 2009) (noting that the first element of a breach of contract claim is the existence of a valid contract between the parties)(citation omitted).

Plaintiff offers an alternative argument in support of its breach of contract claims. It asserts that the Clear Cut Defendants represented that they were agents of the Safeguard Defendants, such that Safeguard, as principal, should be liable for the obligations entered into by its agent Clear Cut.

Generally, an agent may only bind his principal for such acts that are within his actual or apparent authority." *New Jersey Lawyers' Fund for Client Protection v. Stewart Title Guar. Co.,* 203 N.J. 208, 1 A.3d 632, 652 (N.J.2010) (internal quotation marks and citation omitted). "Actual authority occurs 'when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the

6

agent, that the principal wishes the agent so to act.'" *Id.* (quoting RESTATEMENT (THIRD) OF AGENCY § 2.01).

The doctrine of apparent authority provides that a principal is liable for the acts of the agent even if the agent did not have actual authority because "the actions of [the] principal ... somehow misle[d] the public into believing that ... the authority exist[ed]." *Basil v. Wolf*, 935 A.2d 1154, 1172 (N.J.2007) (quoting *Arthur v. St. Peters Hospital,* 405 A.2d 443, 446 (N.J. Super. Ct. Law Div.1979)).  "The key question 'is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question.'" *Id.* at 1172 (quoting *Arthur*, 405 A.2d at 446). Thus, apparent authority is determined by the principal's conduct, rather than the agent's conduct. *Id.; Mercer v. Weyerhaeuser,* 735 A.2d 576, 592 (N.J. App. Div. 1999).

Additionally, under Federal Rule of Civil Procedure 8, a plaintiff must plead facts sufficient to establish that the asserted agency relationship existed. *Garczynski v. Countrywide Home Loans, Inc.*, 656 F.Supp.2d 505, 512–13 (E.D.Pa.2009) (holding that under *Iqbal,* a plaintiff's conclusory allegations of agency were insufficient to establish actual or apparent authority); *Politi v. Peoples Mortg. Corp.*, No. 10–04194, 2011 WL 666086 at *6 (D.N.J. Feb. 14, 2011); *see also Cabrera v. Jakabovitz*, 24 F.3d 372, 386 n.14 (2d Cir.1994) ("[a]gency is a legal concept which depends upon the existence of required factual elements."). A plaintiff may not simply assert in conclusory terms that a party is another party's agent for purposes of vicarious liability. *See Payan v. GreenPoint Mortg. Funding, Inc.*, No. 08–6390, 2010 WL 5253016 (D.N.J. Dec. 17, 2010) (denying claim based on agency relationship because the plaintiff failed to allege facts sufficient to establish agency under New Jersey law); *see also*

*Defer LP v. Raymond James Fin., Inc.*, No. 08–3449, 2010 WL 3452387 (S.D.N.Y. Sept. 2,

2010) (dismissing a claim predicated on an agency relationship under New York law because the

plaintiff did not plead facts sufficient to establish agency).

In the instant case Plaintiff offers only the following allegations to establish an agency

relationship between Safeguard and Clear Cut:

> 18.  Prior to February 15, 2010, the [Defendant] Kaizars did not
> disclose that they were acting in the capacity of agents for
> Safeguard . . . .
>
> 27.  Kaizar disclosed that Clear Cut was acting as, and was
> authorized to act as, the agent of Safeguard in contracting with
> subcontractors such as TBI . . . .

Sec. Am. Compl.  These allegations are insufficient to establish the existence of an agency

relationship.  Plaintiff's Second Amended Complaint makes no showing that actual authority for

an agency relationship existed as it alleges no facts to show that *Safeguard* made any

manifestations to Plaintiff that Clear Cut was acting in the capacity as Safeguard's agent.

Similarly, the Complaint makes no showing that apparent authority existed as Plaintiff alleges no

facts to show that the actions of *Safeguard* misled the public into believing that Clear Cut was its

agent.  Instead, the only actions referred to relating to manifestations of an agency relationship

are those taken by Clear Cut.  Accordingly, the Court will grant the Safeguard Defendants'

motion to dismiss Counts I and III.

*ii. Quantum meruit and unjust enrichment claims.*

Counts IV and V of Plaintiff's Second Amended Complaint state Quantum meruit and

Unjust Enrichment claims against Safeguard.  Safeguard asks the Court to dismiss these counts

against them because Plaintiffs have failed to allege the elements of a prima facie case under

either quasi-contractual theory.

To state a claim for recovery based on quantum meruit, a plaintiff must establish four elements: (1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefore; and (4) the reasonable value of the services.  *Starkey, Kelly, Blaney, & White v. Estate of Nicolaysen,* 796 A.2d 238, 242-43 (N.J. 2002) (citing *Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 98 (2d Cir. 1994)). The related theory of unjust enrichment involves two essential elements: (1) a plaintiff must demonstrate that a defendant received a benefit; and (2) that retention of that benefit would be unjust.  *MK Strategies*, 2007 WL 4322796, at 3 (citing *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)).  In order to prove this second element, a plaintiff must show that it expected remuneration from the defendant at the time it performed or conferred a benefit on the defendant.  *Id.*  Thus both the second element of an unjust enrichment claim and the third element of a quantum meruit claim require a showing of an expectation of compensation or payment from the party against whom relief is sought.

In this case, Plaintiff's Second Amended Complaint fails to make a showing of an expectation of compensation from Safeguard.  Plaintiff contracted solely with Clear Cut and did not even know that it was serving as a sub-subcontractor with Safeguard for the first six months of that contract's performance.  *See* Sec. Amend. Compl. ¶ 27.  Plaintiff states that it sent invoices and work orders solely to Clear Cut.  *Id.* ¶¶ 25-32.  Nowhere in the pleadings is there any evidence that Plaintiff expected payment directly from Safeguard.  Accordingly, Plaintiff's quasi-contract claims are insufficient, and the Court will grant Safeguard's motion to dismiss them.

**III.    CONCLUSION**

For the reasons state above, the Court will grant Defendants' motion to dismiss all claims against the Safeguard Defendants, and will grant the Clear Cut Defendants' motion to dismiss Count II of Plaintiff's Second Amended Complaint alleging violations of the NJPPA.  The Court will issue an appropriate order.


Dated:    3/25/13                                             /s/ Robert B. Kugler
                                                   ROBERT B. KUGLER
                                                   United States District Judge