# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|   |   |   |
|---|---|---|
| TBI UNLIMITED, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CLEAR CUT LAWN DECISIONS, LLC and CLEARCUT, INC., MICHAEL KAIZAR and PATRICE KAIZAR, | : | Civil No. 12-3355 (RBK/JS) |
| | : | **OPINION** |
| Defendants, | : | |
| | : | |
| CLEAR CUT LAWN DECISIONS, LLC and CLEARCUT, INC. | : | |
| | : | |
| Third-Party Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM TAYLOR, | : | |
| | : | |
| Third-Party Defendant. | : | |

**KUGLER**, United States District Judge:

This matter arises out of Defendants Clear Cut Lawn Decisions, LLC and Clearcut, Inc. (together, "Clear Cut"), and Michael Kaizar and Patrice Kaizar's (the "Kaizar Defendants") Counterclaim against Plaintiff TBI Unlimited, LLC ("TBI"), and Clear Cut's Third-Party Complaint against William Taylor ("Taylor"), the alleged owner and sole member of TBI.

Presently before the Court is TBI and Taylor's motion to dismiss the Counterclaim and Third-Party Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons stated below, TBI and Taylor's motion will be **GRANTED**.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

In early 2010, Clear Cut contracted with Safeguard Properties, Inc. to provide property preservation services for Safeguard's mortgage-servicing company clients. See TBI Unlimited, LLC v. Clearcut Lawn Decisions, LLC, No. 12-3355, 2013 WL 1223643, at *1 n.2 (D.N.J. Mar. 25, 2013). Clear Cut then subcontracted with TBI to perform lawn work on these properties in New Jersey. Id. Their relationship was amicable until May 2011, when Clear Cut stopped paying TBI for completed lawn maintenance. Id. On June 4, 2012, TBI filed suit against Safeguard and Clear Cut. After this action was dismissed for lack of subject matter jurisdiction, TBI filed a Second Amended Complaint on July 11, 2002. (Doc. No. 12.) On March 25, 2013, the Court dismissed all counts against Safeguard pursuant to Rule 12(b)(6). TBI Unlimited, LLC, 2013 WL 1223643, at *5. Clear Cut and the Kaizar Defendants remained parties to this action.

On April 22, 2013, Clear Cut and the Kaizar Defendants brought the instant Counterclaim and Third-Party Complaint, alleging breach of the covenant of good faith and fair dealing, equitable and common law fraud, violation of the New Jersey Consumer Fraud Act ("NJCFA"), negligent misrepresentation, negligence, *quantum meruit*, unjust enrichment, and punitive damages, rooted in virtually identical allegations against TBI and Taylor. (Countercl. ¶¶ 18-68; Third-Party Compl. ¶¶ 10-60, Doc. No. 25.)

Central to these claims are allegations that although Clear Cut and the Kaizar Defendants had a valid contract in place with TBI that provided that TBI would perform lawn work in a

timely and workman-like fashion, TBI failed to fulfill its obligations under the contract. (Countercl. ¶¶ 3, 13-14.) They also claim that TBI represented to them that the work had been completed, when in fact it had not, and that TBI fraudulently submitted photographs of completed lawns in an attempt to prove that the lawn mowing or "cuts" had been completed. (Id. ¶¶ 4, 5.) Clear Cut and the Kaizar Defendants also allege that TBI demanded, and received, payment for lawn work it did not actually complete. (Id. ¶¶ 6, 7.) As a result of TBI's actions, Clear Cut and the Kaizar Defendants allege that Safeguard discontinued their contract in New Jersey. (Id. ¶ 8.) In the Third-Party Complaint, Clear Cut accuses Taylor of piercing the corporate veil and breach of contract, based on the same conduct as alleged against TBI. (Third-Party Compl. ¶¶ 1-9.)

On May 13, 2013, TBI and Taylor filed their motion to dismiss Counts II through X of Clear Cut and the Kaizar Defendants' Counterclaim, and Counts III through XI of Clear Cut's Third-Party Complaint.[1] The Court will now consider each of these issues in turn.

## II. DISCUSSION & ANALYSIS

### A. Legal Standard on a Motion to Dismiss

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)

---

[1] In the introduction of their brief in support of their motion to dismiss, TBI and Taylor assert that they are moving to dismiss Count II of the Third-Party Complaint, which is Clear Cut's breach of contract claim against Taylor. (TBI Br. 1.) However, they advance no legal arguments with regard to Count II, and they make no mention of any intent to move against Count I of the Counterclaim, which is Clear Cut and the Kaizar Defendants' corresponding breach of contract claim against TBI. It appears to the Court that TBI and Taylor did not intend to move against Count II; accordingly, the Court will not address this count any further.

3

(quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).  Also, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis.  Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Id. (quoting Iqbal, 556 U.S. at 675).  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 131 (quoting Iqbal, 556 U.S. at 680).  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Id. (quoting Iqbal, 556 U.S. at 680).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  Id.

### B. Breach of Covenant of Good Faith and Fair Dealing – Counterclaim Count II; Third-Party Complaint Count III

All contracts in New Jersey contain an implied covenant of good faith and fair dealing. Fields v. Thompson Printing Co., Inc., 363 F.3d 259, 270 (3d Cir. 2004); Wade v. Kessler Inst.,

4

172 N.J. 327, 340-41 (2002). The covenant exists to ensure that neither party will endanger nor destroy "the right of the other party to receive the fruits of the contract." Fields, 363 F.3d at 270. To show that a party has breached the covenant of good faith and fair dealing, the other party must prove that the breach was conducted under a bad motive or intention. Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001). Such conduct is defined as that which violates "community standards of decency, fairness or reasonableness." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224 (2005).

A breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of contract action. Wade, 172 N.J. at 344-45. In other words, when a party breaches a duty set forth explicitly in a contract, the remedy exists pursuant to those express terms, and not pursuant to some implied obligation arising out of the contract. Id. The covenant is to be construed narrowly and utilized only when gaps exist as to the parties' intentions. Cargill Global Trading v. Applied Dev. Co., 706 F. Supp. 2d 563, 580 (D.N.J. 2010).

Clear Cut and the Kaizar Defendants' allegations that TBI and Taylor breached the covenant of good faith and fair dealing are rooted in the same allegations that give rise to their breach of contract claims. In support of their claim that TBI and Taylor had a bad motive or intention, they allege that TBI and Taylor submitted pictures of mowed lawns as proof that they had completed work on certain properties, and then demanded payment for work that they had never completed. In support of their breach of contract claims, they rely on the same factual allegations concerning TBI and Taylor's conduct, in addition to alleging that a valid contract existed; namely, that TBI and Taylor failed to complete the lawn work in a timely and workman-like manner, that they falsely represented having completed the work, and demanded money for the incomplete work. (See Countercl. ¶¶ 2-7, 20.) Although the covenant may be used to fill

5

gaps where contract terms are not specific, Clear Cut and the Kaizar Defendants do not assert that their contract with TBI and Taylor contains any holes or gaps such that the covenant is necessary to "give efficacy to the contract as written." See Fields, 363 F.3d at 271-72. Based on the foregoing, Clear Cut and the Kaizar Defendants may not sustain a separate cause of action for breach of the covenant of good faith and fair dealing based on the same conduct that has given rise to their breach of contract claims and where the terms of their contract are clear. Id.; see also Ready & Motivated Minds, LLC v. Ceridian Corp., No. 10-1654, 2011 WL 831776, at *5 (D.N.J. Mar. 2, 2011) (stating that in a previous opinion, the Court dismissed the plaintiff's "breach of good faith and fair dealing claim because it failed to plead any injury to its contractual interest that was different in any way from its breach of contract claims"); Hahn v. OnBoard LLC, No. 09-3639, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009) (dismissing Plaintiff's claim for breach of the implied covenant of good faith and fair dealing because the "resolution of Plaintiff's claim is governed by the terms of an express contract and arises out of the same action underlying Plaintiff's claim for breach of contract").

### C. Equitable and Common Law Fraud – Counterclaim Counts III and IV; Third-Party Complaint Counts IV and V

Clear Cut and the Kaizar Defendants also allege causes of action for equitable and common law fraud. In support of their claims, they state that TBI and Taylor made misrepresentations as to the lawn work they actually completed, and that they made said misrepresentations with the intention that Clear Cut and the Kaizar Defendants rely on them. (Countercl. ¶¶ 23-24, 29-31; Third-Party Compl. ¶¶ 15-16, 21-23.) Clear Cut and the Kaizar Defendants further assert that they did reasonably rely on the misrepresentations, as evidenced by their alleged payments to TBI and Taylor for the work allegedly performed. (Countercl. ¶¶ 25, 32; Third-Party Compl. ¶¶ 24, 30.)

6

To establish a cause of action for common law fraud, a party must show: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). The elements of equitable fraud are similar, except that scienter, or "knowledge of the falsity and an intention to obtain an undue advantage therefrom," is not required. Jewish Cntr. of Sussex Cnty. v. Whale, 86 N.J. 619, 625 (1981).

Claims of fraud are subjected to a heightened pleading standard under Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b) exists to put the party alleged of a fraudulent act on notice as to the "precise misconduct" with which they are charged. Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). To satisfy this requirement, the party pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Institutional Investors Grp. v. Avaya, Inc., 564 F.3d 242, 253 (3d Cir. 2009) (quoting Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc., 497 F.3d 546, 550 (5th Cir. 2007)). In other words, allegations of fraud must contain "the who, what, when, where, and how: the first paragraph of any newspaper story." Id. (quoting In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999)).

Here, Clear Cut and the Kaizar Defendants have failed to allege sufficient facts, or to allege them with the requisite specificity, to meet Rule 9(b)'s heightened pleading standard. For example, Clear Cut and the Kaizar Defendants do not identify the number of lawns that were

7

the subjects of the photographs allegedly meant to represent that the work that TBI and Taylor allegedly misrepresented as being completed, nor do they provide any descriptive information about the properties the photographs depicted. Furthermore, there are no dates or times alleged concerning when the allegedly fraudulent photographs were provided to Clear Cut and the Kaizar Defendants, or when the related misrepresentations were made. Finally, Clear Cut and the Kaizar Defendants set forth no allegations concerning the identities of the individuals at TBI who made the alleged misrepresentations, nor do they identify, e.g., to whom at Clear Cut, or to which Kaizar Defendant, they were made. Based on the pleadings before them, TBI and Taylor are left with a window of sixteen months, or from February 2010 to May 2011, within which they must ascertain who did what and when. It may be that every photograph submitted by TBI and Taylor were fraudulent, or perhaps only a handful. But TBI and Taylor cannot be said to have been sufficiently put on notice by the general allegations of fraud in Clear Cut and the Kaizar Defendants' Counterclaim and Clear Cut's Third-Party Complaint. As such, these claims must be dismissed on this ground alone.

Even if Clear Cut and the Kaizar Defendants had met their burden under Rule 9(b) to allege fraud with particularity, their fraud claims would still fail due to the economic loss doctrine. Generally, the economic loss doctrine acts to bar tort claims that are based on economic or pecuniary losses arising from a breach of contract, or that are associated with the contractual relationship. See Jeffrey J. Shampo, Economic-loss Doctrine–Effect of Doctrine, 74 Am. Jur. 2d Torts § 24 (2013). Simply put, "claims for fraud in the performance of a contract, as opposed to fraud in the inducement of a contract, are not cognizable under New Jersey law." Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562-564 (D.N.J. 2002). Thus, "fraud claims not extrinsic to underlying contract claims are not maintainable as

separate causes of action." Network Commodities, LLC v. Golondrinas Trading Co., No. 11-3119, 2013 WL 1352234, at *7 (D.N.J. Apr. 1, 2013) (citing Gleason v. Norwest Mortg. Inc., 243 F.3d 130, 144 (3d Cir. 2001)).

Clear Cut and the Kaizar Defendants argue that even if the economic loss doctrine applies, TBI and Taylor's "actions induced [Clear Cut and the Kaizar Defendants] to amend the parties' agreement" and this "agreement was made because of [TBI] and [Taylor's] misrepresentation completing the grass cuts." (Clear Cut Br. at 16.) This argument is unavailing. First, Clear Cut and the Kaizar Defendants make no such allegation in their Counterclaim or Third-Party Complaint. Second, their attempt to rely on a paragraph in **TBI's** Second Amended Complaint to survive TBI and Taylor's motion to dismiss disregards their obligations of properly pleading their own claim.[2] Clear Cut and the Kaizar Defendants' attempt to rely on their adversary's pleading is insufficient to allege fraud in the inducement, and they fail to point to any other allegation in their own pleadings that might state this claim.

In light of how Clear Cut and the Kaizar Defendants' allegations of fraud simply rehash their breach of contract claims, the economic loss doctrine precludes their common law and equitable fraud counts.[3]

---

[2] The relevant paragraph states: "The parties' contractual relationship continued into calendar year 2011; however, on March 15, 2011, it was agreed that TBI would be paid Twenty-Four Dollars ($24.00) per cut." (TBI Second Am. Compl. 28, Doc. No. 9.)

[3] Clear Cut also argues that even if the economic loss doctrine applies, there is no privity of contract between Clear Cut and Taylor, such that its fraud claims against Taylor can survive TBI and Taylor's motion to dismiss. (Clear Cut Br. 17.) However, this argument directly contradicts the allegation set forth in Clear Cut's Third-Party Complaint that Clear Cut and Taylor had a "valid contract." (Third-Party Compl. ¶¶ 5-6.) Although the Federal Rules of Civil Procedure provide that a party may plead claims in the alternative, see Fed. R. Civ. P. 8(d)(2), a party is still required to sufficiently allege the elements of its claim. See generally Twombly, 550 U.S. 544 (2007). A failure to do so will lead to dismissal. See Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494, 505-506 (D.N.J. 2009) (dismissing plaintiff's claim for unjust enrichment under Rule 12(b)(6) and acknowledging that although a party may assert alternative theories of recovery, he or she must still "sufficiently allege the elements of" that alternative theory).

**D. Consumer Fraud – Counterclaim Count VI; Third-Party Complaint Count VII**

New Jersey's Consumer Fraud Act imposes liability on any person who uses "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission." N.J. Stat. Ann. § 56:8–2 (West 2013). Violations include "affirmative acts, knowing omissions, and regulatory violations." Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994). Accordingly, to state a claim under the NJCFA, a plaintiff must allege (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss. See Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc., 929 A.2d 1076, 1086 (N.J. 2007) (citations omitted).

The NJCFA has been interpreted broadly to include businesses under the definition of "consumer." Marascio v. Campanella, 689 A.2d 852, 856 (N.J. Super. Ct. App. Div. 1997). Regardless of whether a consumer is an individual or a commercial entity, if the individual or entity purchases a service that is generally sold to the public at large, the NJCFA will apply. Id.; see also Hundred East Credit Corp. v. Eric Shuster Corp., 515 A.2d 246, 248 (N.J. Super. Ct. App. Div. 1986).

As with common law and equitable fraud, a NJCFA violation must be plead with particularity pursuant to Rule 9(b). See Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (in discussing plaintiff's NJCFA claim, stating that "[p]ursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged' . . . . To

satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation").

As explained above in the context of Clear Cut and the Kaizar Defendants' equitable and common law fraud claims—also subject to Rule 9(b)—Clear Cut and the Kaizar Defendants have broadly alleged wrongdoing by TBI and Taylor, but have failed to supplement these statements with precise allegations of "date, time, or place." See Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999). Because they have failed to set forth sufficient factual allegations concerning TBI and Taylor's "unlawful conduct," their claims under the NJCFA are similarly deficient under Rule 9(b). See Frederico, 507 F.3d 188, 200 (3d Cir. 2007) (upholding district court's dismissal of plaintiff's NJCFA claim where she set forth broad statements about defendant's alleged fraudulent misrepresentations in her complaint, but failed to include the substance of those misrepresentations).[4]

### E. Negligent Misrepresentation and Negligence – Counterclaim Counts V and VII; Third-Party Complaint Counts VI and VIII

Negligence claims, as with fraud claims, are also typically barred by the economic loss doctrine. Dean v. Barrett Homes, Inc., 968 A.2d 192, 202 (N.J. Super. Ct. App. Div. 2009), rev'd on other grounds, 204 N.J. 286 (2010). Clear Cut and the Kaizar Defendants correctly assert that there are exceptions to this general rule. (See Clear Cut Br. 21.) In support of their argument, they cite People Express Airlines, Inc. v. Consolidated Rail Corporation, a case where the New Jersey Supreme Court held that an airline could recover lost income resulting from defendant's negligent conduct, even though the airline had not suffered a physical harm. 100 N.J. 246, 267 (1985). Clear Cut and the Kaizar Defendants argue that their claim should succeed

---

[4] Because Clear Cut and the Kaizar Defendants have failed to satisfy the heightened pleading standard of Rule 9(b), the Court declines to address whether the purchase of large quantities of grass cuts to be performed on foreclosed residential properties is a service generally available to the public at large, such that the NJCFA would apply.

here because, similar to the plaintiffs in People Express, they "were [ ] reasonably foreseeable parties that were caused injury by [TBI and Taylor's] negligence" even though they only suffered economic loss. This argument is unavailing.

Although People Express expanded a plaintiff's ability to recover for economic loss in the absence of a physical harm caused by a defendant's negligent conduct, id. at 251, 267, the New Jersey Supreme Court made clear that in circumstances where parties are in a contractual relationship, they are barred from advancing tort claims to recover purely economic losses caused by the negligence of the other party, id. at 256. In arriving at its decision, the court articulated certain policy considerations that evidenced a desire to provide redress for plaintiffs previously unable to recover their economic losses due to the absence of a legal relationship that would have provided the avenue for redress. Indeed, the court surveyed a number of situations where recovery in tort would be allowed even though the aggrieved party had "no direct relationship" to the defendant. The court noted, however, that "[i]mportantly, the cases [cited] do not involve a breach of contract claim between parties in privity." Id. at 263. Further, additional case law has also established that under New Jersey law "a party cannot maintain a negligence action, in addition to a contract action, unless the plaintiff can establish and independent duty of care." Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 278-79 (N.J. 2002).

Here, Clear Cut and the Kaizar Defendants have alleged that a valid contract existed with TBI and Taylor, and have failed to set forth any allegations that would establish an independent duty of care. (Countercl. ¶¶ 14, 50; Third-Party Compl. ¶¶ 6, 42.) Although Clear Cut and the Kaizar Defendants allege that TBI and Taylor "owed a duty to Clear [C]ut to perform all and/or part of the work in a good workmanlike manner," these allegations evince a violation of the terms of the contract itself, rather than an independent duty imposed by law. See Saltiel, 788

12

A.2d at 280 (holding that defendant's failure to use its specific technical skills that it was obligated to use under its contract with plaintiff "was not a violation of an obligation imposed by law, but rather a breach of its contractual duties" and thus a negligence claim would not stand). Accordingly, Clear Cut and the Kaizar Defendants' tort claims of negligent misrepresentation and negligence will be dismissed. See SRC Const. Corp. of Monroe v. Atlantic City Hous. Auth., 935 F. Supp. 2d 796, 799 (D.N.J. 2013) (stating the parameters of the economic loss doctrine as follows: "the doctrine only applies to bar certain tort claims between parties to a contract," whereas "the absence of a contract between a plaintiff and defendant in a negligence suit precludes the application of the economic loss doctrine); Int'l Minerals & Min. Corp. v. Citicorp N. Am., Inc., 736 F. Supp. 587 (D.N.J. 1990) (dismissing claims sounding in tort that also related to breach of contract action because defendant did not owe a duty of care separate and apart from the contract between the parties).

### F. *Quantum Meruit* and Unjust Enrichment – Counterclaim Counts VIII and IX; Third-Party Complaint Counts IX and X[5]

Clear Cut and the Kaizar Defendants also allege claims for *quantum meruit* and unjust enrichment, stating that TBI and Taylor received cash payments for incomplete work, and thus that Clear Cut and the Kaizar Defendants deserve to receive proportionate consideration for said payments. (Countercl. ¶¶ 54, 60; Third-Party Compl. ¶¶ 46, 52.)

As an initial matter, these claims fall victim to the same deficiency as Clear Cut and the Kaizar Defendants' fraud and negligence claims, i.e., because they have alleged that a valid contract was in place and allege a breach of that contract, their claims for equitable restitution are

---

[5] The elements required to state a claim for *quantum meruit* and unjust enrichment are closely related in that the essential element for both claim is that a party must show an expectation of compensation or payment from the party against whom relief is sought. Courts often hold that the two claims are synonymous, and classify them as neither a tort nor contract claim, but rather as forms of equitable restitution. See, e.g., Powers v. Lycoming Engines, 328 F. App'x 121, 126 (3d Cir. 2009). The Court considers these claims in tandem.

barred. Callano v. Oakwood Park Homes Corp., 219 A.2d 332, 334-35 (N.J. Super. Ct. App. Div. 1966) (stating that "recovery on the theory of quasi-contract was developed under the law to provide a remedy where none existed" and thus holding that because plaintiffs had an express contract, they had a remedy and therefore they could not pursue their quasi-contract claim).[6] Accordingly, these claims will be dismissed.

**G. Punitive Damages – Counterclaim Count X; Third-Party Complaint Count XI**

Clear Cut and the Kaizar Defendants attempt to plead punitive damages as a stand-alone cause of action in the Counterclaim and third-party complaint. However, "[p]unitive damages are a remedy incidental to [a] cause of action, not a substantive cause of action in and of themselves." Hassoun v. Cimmino, 126 F. Supp. 2d 353, 372 (D.N.J. 2000). Absent a viable underlying cause of action, a claim for punitive damages alone will not stand. California Natural, Inc. v. Nestle Holdings, Inc., 631 F.Supp. 465, 474 (D.N.J.1986) (noting that New Jersey law contains no independent cause of action for punitive damages). As Counterclaim count X and third-party complaint count XI do not state causes of action, and any attempt to amend these counts would be futile, these counts will be dismissed with prejudice. Hartman v. Twp. of Readington, No. 02-2017, 2006 WL 3485995, at *3 (D.N.J. Nov. 30, 2006) ("Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile").

---

[6] Absent a contract, a court may then look to quasi-contractual theories for recovery. Callano v. Oakwood Park Homes Corp., 219 A.2d 332, 334-35 (N.J. Super. Ct. App. Div. 1966). Alternatively, if an existing contract was subsequently found to be unenforceable, quasi-contractual remedies may be substituted to ensure the wronged party recovers in equity. Starkey, Kelly, Blaney, & White v. Estate of Nicolaysen, 172 N.J. 60, 67-68 (2002). That being said, Clear Cut and the Kaizar Defendants still bear the burden of alleging their alternative theories in a manner sufficient to survive the pleading requirements set forth in the Federal Rules of Civil Procedure, Twombly, and Iqbal.

14

### H. Leave to Amend

"When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Here, there is some indication that Clear Cut and the Kaizar Defendants Counterclaim and Clear Cut's third-party complaint could be amended to comply with the pleading standards set forth in Twombly, Iqbal, and Rule 9(b) such that granting them leave to amend would not be futile. Accordingly, Clear Cut and the Kaizar Defendants will be given **14 days** from the date of the Court's related order to file an amended Counterclaim and third-party complaint.

### III. CONCLUSION

For the reasons stated above, Plaintiff's motion to dismiss is **GRANTED**. Counterclaim counts II through IX and third-party complaint counts III through X will be dismissed without prejudice. Counterclaim count X and Third-Party Complaint Count XI, which assert punitive damages as a stand-alone cause of action, will be dismissed with prejudice. An appropriate order will issue today.


Dated: 11/14/2013  /s/ Robert B. Kugler  
ROBERT B. KUGLER  
United States District Judge